IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

  Plaintiff,

vs.                     No. CR 07-297 JB

LARRY JONES,

  Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Larry Jones' Sentencing Memorandum, filed July 26, 2007 (Doc. 23). The Court held a sentencing hearing on August 17, 2007. The primary issues are: (i) whether the Court should grant a downward departure under U.S.S.G. § 5K2.10 based on the victim's conduct; (ii) whether the Court should grant a downward departure for Jones' extraordinary post-offense rehabilitation; and (iii) whether a variance is appropriate in Jones' case. Because the Court does not believe that the victim's conduct warrants a departure, and because it does not believe that Jones' post-offense rehabilitation is outside of the heartland of cases, but because the Court concludes that the factors of 18 U.S.C. § 3553(a) counsel for a variance, the Court will deny Jones' requests for downward departures, but will grant his request for a variance. The Court will sentence Jones to 24 months incarceration.

## FACTUAL BACKGROUND

Jones is a fifty-nine year old Navajo man who is a recovering alcoholic. See Presentence Investigation Report at 1, disclosed June 20, 2007 ("PSR"); Defendant Larry Jones Sentencing Memorandum ¶ 11, at 5, filed July 26, 2007 (Doc. 23)("Sentencing Memorandum"). Jones has no

prior criminal record that adds points to his criminal history computation.  See PSR ¶ 41, at 12. Jones reported that he has been arrested for public intoxication, however, on ninety-nine occasions. See id. ¶ 42, at 12.

Before his arrest in this case, Jones donated a significant portion of his time to his local Chapter House.  See Sentencing Memorandum ¶ 14, at 6.  Records from the Tsayatoh Chapter House show that Jones contributed 1,528 hours of his time in 2006, 1,704 hours in 2005, and 1,512 hours in 2004.  See id.  Jones cleaned the Chapter House and kept things running.  See id.

Jones has been a practicing alcoholic for more than thirty years.  See id. ¶ 13, at 6. Jones' history of alcoholism pervades the PSR.  See PSR.  His alcoholism has fractured his relationship with his family and adversely affected his health.  See  Sentencing Memorandum  ¶ 11, at 5. Although Jones has been detained approximately ninety-nine times for public intoxication, there is no indication that Jones was ever charged with, or sentenced for, the offense of public intoxication. See PSR ¶ 42, at 12; Sentencing Memorandum ¶ 10, at 5.  Rather, these detentions seem to have been "protective custody" detentions, during which Jones was taken to a "drunk tank," left to sleep it off, and then released without any formal criminal proceedings.  Sentencing Memorandum ¶ 10, at 5.  See  PSR ¶ 42, at 12.

The offense at issue occurred on January 27, 2007.  See PSR at 1.  Half brothers Larry Jones and James Haley celebrated the dawn of Saturday, January 27, 2007, by getting drunk together.  See Sentencing Memorandum ¶ 3, at 1.  During the course of their revelry, an argument began.  See id.

Neither brother has a clear recollection of the source or course of the argument. See id. Around that time, Jones began choking the victim, trying to illustrate a choking incident that involved Jones' son. See PSR ¶ 14, at 6.  Haley became upset, told Jones to stop choking him, and then punched Jones. See id.

Jones asserts, upon information and belief, that the blow struck by Haley was accompanied by threats to Jones. See Sentencing Memorandum ¶ 5, at 3. The blow to Jones' face opened a cut that took three stitches to close. See PSR ¶ 16, at 6. Jones left the victim's dwelling, and the victim locked his door. See PSR ¶ 14, at 6. Jones then went and asked family members to call the police on Haley. See PSR ¶ 10, at 5. Jones did not, however, wait for the police to arrive. See Sentencing Memorandum ¶ 5, at 3. Jones contends that, after reflecting on the threats and prior assaults on him by Haley, he grabbed a machete and went back to his brother's dwelling. See id.

Jones threatened Haley, yelling: "I'm going to get you." PSR ¶ 12, at 5. The front door of Haley's dwelling was a hollow-core, interior, bathroom door. See Sentencing Memorandum ¶ 6, at 3. Typically, one can put a foot through this type of door with minimal effort. See id. ¶ 6, at 3-4. Jones repeatedly hit the locked door with his machete. See id. That it took Jones several blows to hack a hole through the door is testament to his extreme level of intoxication. See id. ¶ 6, at 3.

After knocking a hole in the door, Jones unlocked the door and entered the residence to attack Haley. See PSR ¶ 15, at 6. Once inside the dwelling, Jones and Haley began fighting, at which time Jones swung the machete and struck Haley. See id. Haley fended off the blow with his left arm, receiving a cut on the left forearm. See id. Jones thereafter left Haley's home, fell down, and passed out. See Sentencing Memorandum ¶ 6, at 4.

Family members took Haley to the hospital because his arm was bleeding. See Sentencing Memorandum ¶ 7, at 4. As a result of Jones' offense, Haley sustained a complex laceration on his left arm, including tendon, tissue, and muscle damage. See PSR ¶ 17, at 7. The PSR states that after approximately seven hours at the hospital, the victim was discharged at the hospital and instructed to return for follow-up care in several days. See id. Jones contends that Haley was at a hospital for approximately four and a half hours, from 8:41 a.m. to 1:05 p.m. See Sentencing Memorandum ¶

7, at 4.  Jones also contends that Haley was discharged to NCI, suggesting that he was committed for extreme alcohol intoxication.  See id.  Medical records reveal that Haley's blood alcohol level at the hospital was .290.  See id.

Jones was also taken to the hospital.  See Sentencing Memorandum ¶ 5, at 8.  He received three stitches under his left eye because of the blow struck by Haley.  See id.  Jones was discharged to the custody of criminal investigators who took him to the tribal jail and charged him with this offense.  See id.

Jones contends that family members report Haley is belligerent and violent when intoxicated.  See Sentencing Memorandum ¶ 4, at 3.  Jones notes that Haley was convicted of the offense of murder in Denton, Texas in 1977.  See Sentencing Memorandum, Exhibit A, Judgment at 2.  In 2002, in McKinley County, New Mexico, Haley was charged with battery upon a peace officer. See Sentencing Memorandum, Exhibit B, Criminal Complaint at 1.  Haley eventually pled guilty to a charge of resisting or obstructing a peace officer.  See id.  Jones contends that Haley has sustained numerous injuries over the years during his drunken escapades.  See Sentencing Memorandum ¶ 4, at 3. Jones asserts, upon information and belief, that Haley regularly gets into fights and gets beaten up when he is drinking. See id.  Jones further contends, also upon information and belief, that Haley collects social security disability because of head injuries sustained in a fight that occurred when he was drinking.  See id.

## PROCEDURAL BACKGROUND

Jones is before the Court for sentencing on a charge of assault with a deadly weapon.  See PSR at 1.  There is no mandatory minimum.  See 18 U.S.C. § 113(a)(3).  Jones concedes that the United States Probation Office correctly calculated the federal sentencing guidelines applicable to his case as 30 to 37 months. See Sentencing Memorandum at 1.  He received no criminal history

points.  See PSR ¶ 41, at 12.

Jones moves the Court, through counsel and pursuant to 18 U.S.C. § 3553(a) and the Fifth and Sixth Amendments to the United States Constitution, to impose a sentence sufficient but not greater than necessary to satisfy the purposes of federal sentencing.  See Sentencing Memorandum at 1.  Jones requests that the Court consider a sentence of one year and one day.  See id.  Jones contends that a sentence of a year and a day would be sufficient, but not greater than necessary, to satisfy the purposes of federal sentencing.  See id.

Jones represents that he has now been sober for more than five months.  See id. ¶ 5, at 12. Jones has attended more than twenty-five AA meetings as well as individual and group counseling while at La Pasada Halfway House in Albuquerque, New Mexico.  See id.  This is the first span of sustained sobriety that he has enjoyed in his adult life.  See id. ¶ 13, at 6.  He is a model resident of the halfway house.  See PSR ¶ 71, at 19-20.  Jones works at St. Martin's Hospitality Center in its recycling unit.  See id. ¶ 64, at 18-19.  He represents that, while this work is physically taxing for him, he enjoys the simple productivity of regular work.  See Sentencing Memorandum ¶ 12, at 5-6. Jones also enjoys the sober lifestyle he has adopted.  See id.

The United States responded to Jones' Sentencing Memorandum.  See Government's Response to Defendant Larry Jones' Sentencing Memorandum, filed August 13, 2007 (Doc. 24)("Government's Response").  The United States contends that a reasonable sentence for Jones falls within the specified Guideline range of 30 to 37 months.  See Government's Response ¶ 1, at 1. The United States argues that the facts of the offense do not warrant a downward departure under § 5K2.10.  See Government's Response ¶ 1, at 1-2.  Specifically, the United States points out that Jones turned more aggressive as time went on during the night of the offense and that the victim's conduct did not provoke Jones' attack.  See id.  The United States also argues that a departure for

Jones' recent sobriety does not rise to the level of extraordinary post offense rehabilitation that warrants a departure. See id. ¶ 3, at 2-3. Ultimately the United States recommends a sentence of 30 months imprisonment. See id. The United States objects to any sentence that would fall below the guideline range. See id. ¶ 1, at 1.

The United States Probation Office responded to Jones' Sentencing Memorandum in an Addendum to the PSR. See PSR, Addendum at 1, disclosed July 30, 2007 ("Addendum"). The Probation Officer asserts that a downward departure based on U.S.S.G. § 5K2.10 for the victim's conduct is not appropriate in Jones' case. See id. The Probation Officer points out that Jones' response to the victim throwing the first blow was unreasonable and disproportionate, and that such a variance is not appropriate. See id. at 1-2. The Probation Officer also argues that a departure under U.S.S.G. § 5K2.0 for extraordinary post-offense rehabilitation is not appropriate. See id. at 2-3. The Probation Officer states that Jones' compliance with his conditions of release are not unusual or exceptional from conduct expected from all defendants on conditions of release. See id. at 3. Rather, the Probation Officer states that such conduct is expected from all defendants, and a departure is not warranted for expected behavior. See id.

Haley, the victim of Jones' crime, has written a letter to the Court stating that he did not press charges and that he does not want to see his brother imprisoned for the fight at issue in this case. See Sentencing Memorandum, Exhibit C, Letter from James Haley, at 1. Haley requests that Jones be released to his mother or be put on probation for a short time. See id.

### **RELEVANT LAW REGARDING SENTENCING GUIDELINES**

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States severed the mandatory provisions from the Federal Sentencing Act, thus making the Guidelines effectively advisory. In excising the two sections, the Supreme Court left the remainder of the Act

intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D). See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case."). To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference. See Rita v. United States, 127 S. Ct. 2456, 2464 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of

many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"). They are significant because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses." United States v. Cage, 451 F.3d at 593 (internal quotations omitted). A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006). This presumption, however, is an appellate presumption, not one that the trial court can or should apply. See Rita v. United States, 127 S. Ct. at 2463; Gall v. United States, 128 S.Ct. 586, *591 (2007); Kimbrough v. United States, 128 S.Ct. 558, 564 (2007). Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in face of the advisory guideline sentence. See Rita v. United States, 127 S. Ct. at 2463; Gall v. United States, 128 S.Ct. at *591; Kimbrough v. United States, 128 S.Ct. at 564.

## **RELEVANT ADVISORY GUIDELINE SENTENCING LAW**

Jones does not dispute the PSR's Guideline calculations. Nevertheless, he seeks various departures under the Guidelines. He also emphasizes his lack of prior criminal history.

    **1.**    **U.S.S.G. § 4A1.2(c)(2).**

Sentences for public intoxication "are never counted" under the sentencing guidelines. U.S.S.G. § 4A1.2(c)(2) states:

> (2) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are never counted:
>
> Fish and game violations
>
> Hitchhiking
>
> Juvenile status offenses and truancy
>
> Local ordinance violations (except those violations that are also violations under state criminal law)
>
> Loitering
>
> Minor traffic infractions (e.g., speeding)
>
> Public intoxication
>
> Vagrancy.

U.S.S.G. § 4A1.2(c)(2).

    **2.**    **Extraordinary Post-Offense Rehabilitation.**

Extraordinary post-offense rehabilitation is an appropriate basis for a downward departure from an applicable guideline sentence. See United States v. Benally, 215 F.3d 1068, 1075 (10th Cir. 2000); United States v. Jones, 158 F.3d 492, 502-503 (10th Cir. 1998). 18 U.S.S.G. § 5K2.0 sets out a departure that is appropriate when there are circumstances not adequately taken into consideration by the Guidelines. See 18 U.S.S.G. § 5K2.0. 18 U.S.S.G. § 5K2.0 states:

> (2) Departures Based on Circumstances of a Kind not Adequately Taken into Consideration.--
>
> (A) Identified Circumstances.--This subpart (Chapter Five, Part K, Subpart 2 (Other Grounds for Departure)) identifies some of the circumstances that the Commission

may have not adequately taken into consideration in determining the applicable guideline range (e.g., as a specific offense characteristic or other adjustment). If any such circumstance is present in the case and has not adequately been taken into consideration in determining the applicable guideline range, a departure consistent with 18 U.S.C. § 3553(b) and the provisions of this subpart may be warranted.

(B) Unidentified Circumstances.--A departure may be warranted in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence.

(3) Departures Based on Circumstances Present to a Degree not Adequately Taken into Consideration.--A departure may be warranted in an exceptional case, even though the circumstance that forms the basis for the departure is taken into consideration in determining the guideline range, if the court determines that such circumstance is present in the offense to a degree substantially in excess of, or substantially below, that which ordinarily is involved in that kind of offense.

(4) Departures Based on not Ordinarily Relevant Offender Characteristics and Other Circumstances.--An offender characteristic or other circumstance identified in Chapter Five, Part H (Offender Characteristics) or elsewhere in the guidelines as not ordinarily relevant in determining whether a departure is warranted may be relevant to this determination only if such offender characteristic or other circumstance is present to an exceptional degree.

### 3.     U.S.S.G. § 5K2.10

U.S.S.G. § 5K2.10 sets out a non-exhaustive list of factors that the Court may consider in deciding whether an adjustment for the victim's conduct is appropriate. See U.S.S.G. § 5K2.10. These are not elements of a defense, but are a list of the things that the Court should consider in making a departure decision. U.S.S.G. § 5K2.10 states:

> If the victim's wrongful conduct contributed significantly to provoking the offense behavior, the court may reduce the sentence below the guideline range to reflect the nature and circumstances of the offense. In deciding whether a sentence reduction is warranted, and the extent of such reduction, the court should consider the following:
>
> (1) The size and strength of the victim, or other relevant physical characteristics, in comparison with those of the defendant.
>
> (2) The persistence of the victim's conduct and any efforts by the defendant to

prevent confrontation.

(3) The danger reasonably perceived by the defendant, including the victim's reputation for violence.

(4) The danger actually presented to the defendant by the victim.

(5) Any other relevant conduct by the victim that substantially contributed to the danger presented.

(6) The proportionality and reasonableness of the defendant's response to the victim's provocation.

U.S.S.G. § 5K2.10.

## ANALYSIS

The Court was before Booker -- and remains after Booker -- authorized to consider the relevancy of the factors that Jones raises as grounds for departure. The Court believes, however, that Jones has not presented evidence to the Court that his situation falls outside the heartland of cases on either of his requested bases for departure. The Court also believes, however, that it is appropriate to grant Jones a variance from the Guideline sentence. Thus, the Court will not grant Jones a departure, but will grant him a variance.

**I.     THE COURT DOES NOT BELIEVE THAT A DOWNWARD DEPARTURE IS WARRANTED UNDER THE FACTS AND CIRCUMSTANCES OF THIS CASE.**

Jones contends that the Court should depart downward from the advisory Guideline sentence because of Haley's conduct. He also seeks a downward departure because of his post-offense rehabilitation. Neither factor, however, is present to a degree that takes this case out of the heartland of cases that the Sentencing Commission considered when it arrived at its advisory Guideline sentence.

**A.     THE COURT WILL NOT DEPART DOWNWARD PURSUANT TO § 5K2.10.**

Jones contends that, under the totality of the circumstances of this case, a downward

departure for the victim's conduct under § 5K2.10 is appropriate. See Sentencing Memorandum ¶ 9, at 4; U.S.S.G. § 5K2.10. Jones argues that such a departure is warranted because the victim struck the first blow, inflicting a wound on Jones' face that required three stitches to close. See Sentencing Memorandum ¶ 9, at 4. Jones also notes that Haley was previously convicted of murder and fighting with police officers, and that he has a reputation in his family and in his community as a belligerent and violent person when intoxicated. See id. Jones contends that the fact that the victim struck the first blow inflicting a wound that required three stitches to close, Haley's reputation for violence, and Haley's history of assaults on Jones, warrant a departure. See id. ¶ 9, at 5. Jones further contends that his response was proportionate because he struck only a single blow. See id. He asserts that the offense in this case is more "tit for tat" rather than an unprovoked act of violence. Sentencing Memorandum ¶ 9, at 5.

      Jones and Haley consumed alcohol inside Haley's dwelling together. See id. ¶ 3, at 2. They both became intoxicated and began arguing. See id. During the argument, Haley struck Jones in the face, causing a laceration near Jones' left eye. See id. ¶ 3, at 3. After being struck in the face by Haley, Jones removed himself from the situation by leaving the victim's dwelling, and the police were called. See id. Instead of allowing the police time to arrive and to handle the matter, Jones took matters into his own hands and decided to return to Haley's dwelling. See id. ¶ 5, at 3. On his way to Haley's dwelling, Jones retrieved a machete and proceeded to Haley's nearby dwelling. See Sentencing Memorandum ¶ 5, at 3. Jones took drastic measures to gain access to Haley's dwelling by chopping a hole in the door of Haley's dwelling to unlock the door. See PSR ¶ 15, at 6. Jones entered Haley's dwelling and struck Haley in the arm with the machete. See id.

      Based on the information available, it appears that Jones' response to being hit in the face by Haley was unreasonable and disproportionate. It therefore does not appear that victim's conduct,

pursuant to U.S.S.G. § 5K2.10, is an appropriate basis for departure.

In light of the facts, it appears that Haley's conduct did not contribute to provoking Jones' attack. The Court does not agree that this offense can be fairly characterized as a "tit for tat." Sentencing Memorandum ¶ 9, at 5. Before the violent act, Jones and Haley had been drinking. In this offense, Jones turned more aggressive as time went by and then Jones used a dangerous weapon -- a machete -- to commit the violent offense. Had Jones struck Haley's head or another vital organ, instead of his arm, the injury could have been grave.

Jones contends that Haley had been previously aggressive toward him. See Sentencing Memorandum ¶ 9, at 4-5. The record does not support, however, that this prior aggression is relevant to this offense. And even if Haley had been previously aggressive towards Jones, a departure remains unjustified. Jones' conduct indicates that, in this offense, he did not act in self-defense. Jones, after already leaving Haley's residence, aggressively returned to the residence, sought Haley out with machete in hand, while in an intoxicated state, and attacked him. The Court does not believe that this case involves a factor that is so great that the Guidelines did not consider it and that it thus falls out of the heartland of cases. A downward departure for the victim's conduct, therefore, is not appropriate.

      **B.    THE COURT WILL NOT GRANT A DOWNWARD DEPARTURE BASED ON JONES' ALLEGED EXTRAORDINARY POST-OFFENSE REHABILITATION.**

Jones does not cite a specific guideline application under which this departure should be granted. Although the Court believes that the Guidelines authorize such a departure, it does not believe that the circumstances of Jones' case warrant a departure on this basis. When the Court looks at application note 3 of the relevant Guideline, it finds two circumstances that give rise or support such a departure: (i) departure is based on circumstances of a kind not adequately taken into

consideration in the guidelines and; (ii) departure is based on circumstances that are present to a degree not adequately taken into consideration in the guidelines. See 18 U.S.C. § 5K2.0 app.n.3.

The Court believes that the Guidelines have contemplated circumstances where an individual is in a halfway house where no alcohol is allowed, thus it is difficult for the Court to say that Jones' circumstances are of a kind not adequately taken into consideration by the Guidelines.  The Court believes the more relevant basis in this situation is whether the circumstances are present to a degree that is not adequately taken into consideration by the Guidelines.  The Court acknowledges that Jones' five months of sobriety is an accomplishment for him, given the amount of alcohol he has consumed during his lifetime.  The Court believes, however, that a five-month period of sobriety is too short of a time period from which to draw any significant conclusions about Jones' post-offense rehabilitation.

Furthermore, the Court notes that Jones cannot drink while in the halfway house, so it is difficult for the Court to determine how he would react to his circumstances if he was not in such a structured and rigorous environment.  In reality, Jones has no choice right now but to refrain from drinking.  Thus, while the Court applauds his accomplishment of recent abstinence from alcohol, it does not believe that his recent sobriety of five months rises to the level of extraordinary post-offense rehabilitation that the Guidelines are contemplating.

The Court agrees with the United States that Jones' situation is not unusual.  It is common for defendants to stay sober when they are put under the supervision of Pretrial Services and the Probation Office, particularly when they are facing sentencing. While the Court acknowledges Jones' argument that his post-offense rehabilitation is extraordinary in comparison with his past life, the Court remains unconvinced that his rehabilitation amounts to the level of extraordinary.  The Court has difficulty differentiating Jones' situation from many other defendants who have long

histories of drug or alcohol abuse, or long criminal records, yet are able to obey the rules during the pretrial period. Thus, the Court believes this case fits within the heartland of cases, and although the Court believes such a departure is authorized, it will exercise its discretion not to depart.

## II.  A VARIANCE FROM THE ADVISORY GUIDELINE RANGE, BASED ON THE FACTORS SET FORTH IN 18 U.S.C. § 3553(a), IS WARRANTED.

The Court has carefully considered all the factors in 18 U.S.C. § 3553(a) in imposing a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553(a). In considering all the factors of § 3553(a), the Court believes that Jones' situation is one that counsels for a variance.

Under all the facts and circumstances of this case, a sentence of a year and a day, as requested by Jones, would not be sufficient, and is less than is necessary to punish Jones for his conduct and deter him and others from such behavior. The Court believes, however, that some variance is warranted. That Jones has managed to avoid criminal charges for fifty-nine years is an indication that, with some structure and assistance, he can continue to do so. Jones requires continued structure and alcohol treatment. With sobriety, there is a chance that Jones will successfully complete a term of supervised release and will live out his days as a law-abiding member of his family and of the community.

Jones contends that, even if the Court finds that departures for the victim's conduct and post-offense rehabilitation are not appropriate in his case, the Court has authority to vary from the Guidelines. See Sentencing Memorandum ¶ 15, at 6. Because the Court believes that the factors of 18 U.S.C. § 3553(a) counsel for a variance in Jones' case, the Court will vary and sentence Jones to 24 months incarceration.

### A.     THE NATURE AND CIRCUMSTANCES OF JONES' OFFENSE.

While the Court does not believe that the victim's involvement in Jones' crime was so serious or extraordinary that it justified a downward departure under the Guidelines, the Court does believe that it is appropriate to take into consideration the victim's conduct when considering whether to vary. On a number of occasions, when there was an altercation between Jones and Haley, Jones was the victim. Sometimes, however, Haley was the victim.

It also seems to be the case that many times alcohol was involved. Thus, the relationship between Jones and Haley seems somewhat complex. The Court acknowledges, however, that although Jones had ninety-nine detentions for intoxication, his problem with violence and alcohol appears to be very limited over his lifetime. The Court believes, therefore, that if Jones can cut the alcohol out of the equation that he has a fair chance of not being involved in a similar crime in the future.

The Court believes that the nature and the circumstances of the offense point in different directions. On the one hand, the offense seems to be fairly limited and isolated. On the other hand, Jones' response to being punched was violent. The Court is therefore unsure that this factor points in a particular direction in determining whether to vary in Jones' case.

### B.     JONES' HISTORY AND CHARACTERISTICS.

In considering the characteristics of Jones, the Court is concerned with his age, because it factors into recidivism in that the likelihood for repetition of this conduct is low and into the fact that he has no criminal history and no criminal history points. Jones is 59 years old and has a criminal history score of 0. See PSR ¶ 41, at 12. Considering Jones' age and lack of a prior criminal record, it is unlikely that Jones will have any further contact with law enforcement as long as he stays away from alcohol. The Court believes, therefore, that Jones' history and characteristics weigh in favor

of the Court granting a variance.

### C. THE NEED FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE.

Jones' offense is very serious, and it needs to be punished. Furthermore, this situation could have had grave consequences if Haley would not have put his arm up and had Jones hit another part of Haley's body with his machete. Thus, for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment, some imprisonment time is necessary.

To afford adequate deterrence, Jones needs to specifically be deterred from being around alcohol and from being around his brother. The Court thus believes that some prison time is necessary to adequately deter Jones from further criminal activity. The Court is not convinced, however, that Jones needs to be kept away from all of society for a great length of time to achieve some of the goals in the Sentencing Reform Act.

The Court believes that 30 months, a sentence at the low-end of the Guideline range, is excessive given that this is a family issue and related to Jones' alcohol problem. Thus, the Court believes it can fashion a somewhat lower sentence, while still promoting respect for the law and achieving the other Sentence Reform Act goals, that is more appropriate for Jones.

### D. THE NEED TO PROVIDE JONES WITH EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE OR OTHER CORRECTIONAL TREATMENT IN THE MOST EFFECTIVE MANNER.

The Court has also considered the need to effectively provide Jones with the training, care or counseling that will help him get rid of his alcohol problem as well as any sort of anger that he may have. The Court is not convinced that 12 months and a day of supervision, as Jones requests, would get Jones on the right track. The Bureau of Prisons often informs the Court that defendants need 24 months and the 500 hour drug and alcohol treatment program to make effective changes in

a defendant's life.  Thus, while the Court is encouraged by Jones' five months of sobriety, the Court wants Jones to further build on his recent success.  A sentence that is more consistent with helping Jones work on a new life style of sobriety through the 500 hour drug and alcohol treatment program is more appropriate than his request for 12 months and a day.  The Court is concerned that if it sentenced Jones to probation that he would slip off his path to sobriety.

The Court believes that a sentence of over two years, however, begins to get punitive without taking into consideration other factors.  Thus, the Court will sentence Jones to 24 months incarceration which it believes to be sufficient without being greater than necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act.  The Court also notes that the letters it received from the victim, asking the Court not punish Jones, are extraordinary.  The Court believes that these letters also counsel for a sentence below the Guideline range and chooses to take those letters very heavily into consideration.

**IT IS ORDERED** that the Defendant's request that the Court impose a sentence of 12 months and a day is denied.  The Court will deny Jones' requests for downward departures.  The Court will grant Jones' request for a variance.  Jones is sentenced to 24 months of incarceration.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Larry Gomez
  Acting United States Attorney for the
    District of New Mexico
Rumaldo R. Armijo
  Assistant United States Attorney for the
    District of New Mexico
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Stephen P. McCue
  Federal Public Defender
Albuquerque, New Mexico

    *Attorneys for the Defendant*